UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY SCHWEIHOFER                    Case No. 17-14222

          Plaintiff,              Marianne O. Battani
    v.                              United States District Judge

COMMISSIONER OF SOCIAL               Stephanie Dawkins Davis
SECURITY,                            United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 15)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 29, 2017, plaintiff Tracy Schweihofer filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Marianne O. Battani referred this matter to the undersigned for the purpose

of reviewing the Commissioner's unfavorable decision that Schweihofer's

disability ended as of May 24, 2016.  (Dkt. 3).  This matter is before the Court on

cross-motions for summary judgment.  (Dkts. 12, 15).

### B.    Administrative Proceedings

On January 7, 2014, Schweihofer filed an application for period of disability

and disability insurance benefits, alleging disability beginning on August 27, 2013.

(Tr. 15). [1]  Schweihofer's claims were initially denied on March 18, 2014.  (Tr. 15).  She requested a hearing and appeared with counsel on July 14, 2014 before Administrative Law Judge ("ALJ") Carol Guyton.  (Tr. 50-85).  In a decision dated August 31, 2016, the ALJ found Schweihofer disabled as of August 27, 2013 and entitled to benefits based on her mental impairments.  (Tr. 11-28).  In that same decision, the ALJ determined that Schweihofer's disability ended on May 24, 2016.  *Id.*  Schweihofer requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 2, 2017, denied her request for review.  (Tr. 1-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner on the question of plaintiff's medical improvement be reversed and that the case be remanded to the Commissioner for further proceedings.

---

[1] The Administrative Record appears on the docket at entry number 6.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Schweihofer was born in 1975 and was 38 years old on the disability onset
date.  (Tr. 18).  She has a bachelor's degree in psychology and past relevant work
as a restaurant manager (skilled and light, performed at medium), server
(semiskilled and light, performed at medium), and trainer (skilled and light,
performed at medium).  (Tr. 18, 59).  Schweihofer lives alone and stopped working
because of her anxiety.  (Tr. 61).

In view of her determination that Schweihofer was disabled for a closed
period, the ALJ undertook to "determine if there has been any medical
improvement in [the claimant's] impairment(s) and, if so, whether this medical
improvement is related to [the claimant's] ability to work."  20 C.F.R.
§ 416.994(b).  The ALJ ascertains medical improvement by utilizing an eight-step
sequential evaluation that largely mirrors the traditional five-step sequential
disability evaluation.  20 C.F.R. § 416.994(b)(5)(i)-(viii); 20 C.F.R.
§ 404.1594(f)(1-8).  At step one, the ALJ determined that plaintiff has not engaged
in substantial gainful activity since August 27, 2013.  (Tr. 18).  At step two, the
ALJ determined that since May 24, 2016, Schweihofer did not have an impairment
or combination of impairments that met or medically equaled a Listing.  (Tr. 24).
At step three, the ALJ found that medical improvement had occurred as of May 24,

2016.  (Tr. 25).  The ALJ determined that Schweihofer did not have new

impairments since May 24, 2016 and thus, her severe impairments were the same

as those from August 27, 2013 through May 23, 2016 (major depressive disorder

with anxious distress and interstitial cystitis.  (Tr. 23, 19).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that, beginning May 23, 2016, the
> claimant had the residual functional capacity to perform
> medium work as defined in 20 CFR 404.1567(c) except
> she can frequently climb ramps and stairs. She can
> frequently crouch. She can occasionally climb ladders,
> ropes, and scaffolds. She can occasionally stoop. There
> are no limits to balancing, kneeling, and crawling. She is
> limited to unskilled work, which consists of simple,
> routine tasks involving no more than simple, short
> instructions and simple work-related decisions with few
> work place changes. She is limited to occasional contact
> with the public and coworkers.

(Tr. 25-26).  The RFC for the closed period was identical, except for the following

additional, work-preclusive restriction: "Due to her psychiatric symptoms, she

would need unscheduled work breaks, which would take her off-task for at least

20% of the time."  (Tr. 19).  Next, the ALJ concluded that, as of May 24, 2016,

Schweihofer was still unable to perform her past relevant work.  (Tr. 26). The ALJ

denied Schweihofer benefits because she found that there are jobs that exist in

significant numbers in the national economy that plaintiff can perform.  (Tr. 27).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a claimant does not obtain relief during the7 administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where she is able to perform substantial gainful activity.  42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 764 (6th Cir.2007). Whether an individual is entitled to continued benefits depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work."  20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-part process.  *See Kennedy,* 247 Fed. Appx. 764-65.  The first part of the process focuses on medical improvement. *Id.* at 764.  The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled."  *Id.* at 764–65 (citing 20 C.F.R. § 404.1594(b)(1)).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s).... 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b) (l)(i).  If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement

is related to the individual's ability to work only if there has been a corresponding
'increase in [the claimant's] functional capacity to do basic work activities....'"
*Kennedy,* 247 Fed. Appx. at 765 (quoting 20 C.F.R. § 404.1594(b)(3)).  *See
also Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. Appx. 358, 361 (6th Cir.2001).

The second part of the cessation analysis focuses on whether the individual
has the ability to engage in substantial gainful activity.  *Kennedy,* 247 Fed. Appx.
at 765.  The implementing regulations for this part of the evaluation incorporate
many of the standards set forth in the regulations that govern initial disability
determinations.  *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f) (7)).  The difference
is that "the ultimate burden of proof lies with the Commissioner in termination
proceedings."  *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v.
Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)).  An increase in the claimant's
functional capacity will lead to a cessation of benefits only if, as a result, the
claimant can perform her past work or other work that exists in significant numbers
in the national economy.  20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended,
the Commissioner uses the eight-step sequential evaluation process outlined in 20
C.F.R. §§ 404.1594(f)(l)-(8) and 416.994(f)(l)-(8).  *Kennedy*, 247 Fed. Appx. at
764.  The steps are:

> (1) Are you engaging in substantial gainful activity?  If
> you are ... we will find disability to have ended....

9

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart?  If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?....

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section....

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply....

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe....

(7) If your impairment(s) is severe, ... we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment....  If you can, we will find that your disability has ended.  If you cannot, we will find that your disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(f).

There is no presumption of continuing disability.  *Kennedy*, 247 Fed. Appx. at 764 (citing *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 286–287 n. 1 (6th Cir. 1994)).  Instead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if she is now able to work.  *Id.*  If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.

C.   Parties' Arguments

Schweihofer argues that the ALJ did not apply the proper legal standard for determining medical improvement.  She maintains that the ALJ misapplied the eight-step analysis for termination (quoted above) and the two-part test for medical improvement, which requires the ALJ to first determine whether there is medical improvement "'based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s).'" *Kennedy v. Astrue*, 247 Fed. Appx. 761, 764-765 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1594(b)(1)(i)).  She points out that this determination is made by comparing the current severity of the plaintiff's medical impairment(s) with the plaintiff's medical impairment(s) at the time of the favorable decision (otherwise known as the "point of comparison").  *See* 20 § C.F.R. 416.994(b)(1)(vii).  The second

11

inquiry is whether there has been a decrease in the severity of plaintiff's impairment(s) since the point of comparison, such that plaintiff's functional capacity to do basic work activities has increased. *Kennedy*, 247 Fed. Appx. at 765.

Schweihofer maintains that the evidence of record does not support a finding that there has been any decrease in the severity of her symptoms as of May 24, 2016. According to Schweihofer, the record evidence documents that her symptoms actually worsened following May 24, 2016. She says progress notes from Dr. Shirley Mack, PhD, LPC, in days leading up to May 24, 2016 and the months after, document the following findings regarding her mental status:

- Decreased concentration; overwhelmed easily; mood wavering, very depressed unable to get out of bed some days (Tr. 46; 713, 5/26/16)

- Flat affect; can't get interested in anything, don't want to do anything (Tr. 45, 6/9/16)

- Finds socialization very difficult (even with own parents); client wants to stay in bed, has not been getting exercise and monitor suicidal ideation; (Tr. 44, 6/30/16)

- "Client struggling not to give up", monitor suicidal ideation; Struggling to keep up with one online course work as can't focus; Unable to visualize a stable future; (Tr. 43, 7/28/16)

- Struggling with motivation, tearful and exhibited low level energy and lack of animation; medication increased with no improvement, poor concentration, easily distracted; Monitor ongoing suicidal ideation; (Tr. 41, 8/25/16)

- Reports mind racing, often still awake at 3:30 a.m., client feeling worthless and hopeless, "would be better for someone like me to die"; (Tr. 39, 9/22/16)

- Physical and mental shutdown caused by major depression; (Tr. 47; 712 5/12/16)

Schweihofer also contends that the ALJ's decision regarding medical improvement is insufficient and unsupported by the record evidence.  The ALJ cited to an entry from her family doctor, Dr. Chad White, wherein he indicated on April 20, 2016, "doing well and plans to continue medication at present dose." According to Schweihofer, the ALJ misunderstood this note, which she maintains merely refers to an earlier visit where she had a problem with the generic Wellbutrin, which caused an increase in side effects and symptoms.  Schweihofer had also indicated to Dr. White that she was "down" for the month of January, which she says is inconsistent with medical improvement.  To support the medical improvement analysis, the ALJ also relied on the initial evaluation of Dr. Bauer, a psychiatrist who Schweihofer saw for the first time on May 23, 2016.  Dr. Bauer diagnosed Schweihofer as suffering from "Major Depressive Disorder, Recurrent, moderate."  Dr. Bauer recommended that she continue on her medications but also added Cymbalta to her medication regimen in hopes of improving her condition. Additionally, he recommended Schweihofer continue treating with her long-time therapist, Dr. Shirley Mack.  Schweihofer maintains that the foregoing two pieces of evidence are not sufficient to support the medical improvement analysis.

Schweihofer also argues that the ALJ did not provide any analysis comparing her RFC during the period she was disabled to the point from which the ALJ believed there was medical improvement.  She says the only statement in this respect is, "the undersigned finds that the claimant's residual functional capacity for basic work activities has increased."  According to Schweihofer, there is no comparison of the medical evidence before and after to provide a basis for medical improvement.  Schweihofer contends that the medical records for May 24, 2016 and after, indicate the same issues, symptoms, limitations, and treatment, and with the addition of a new medications to alleviate Schweihofer's symptoms.  Thus, Schweihofer asserts that remand is appropriate so that a thorough evaluation of medical improvement can be made.

In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence.  While Schweihofer takes issue with the ALJ's consideration of Dr. White's April 2016 treatment note, arguing that the note only showed that there were "no increase in symptoms or side effects" from medications rather than showing she was "doing well or well enough to Work," the Commissioner argues that the February 2016 treatment note preceding the medication change is not as significant as she suggests.  The Commissioner says Dr. White's note that Schweihofer was "down the month of January 2016" is at best ambiguous – explaining that because this statement appears in the history

portion of the treatment note, which also identified pelvic pain, it is not entirely clear what caused Schweihofer to be "down." (Tr. 718).  The Commissioner also points out that, in any event, the ALJ found her disabled in January 2016 and therefore, the January note is not inconsistent with the ALJ's consideration of a normal mental status examination in May 2016 as supportive of medical improvement at that time.  (Tr. 19, 723).

The Commissioner suggests that Schweihofer does not refute Dr. Bauer's May 2016 examination findings but simply disagrees with the ALJ's conclusion that such normal findings reflect medical improvement.  The Commissioner also contends that much of Schweihofer's argument relies on evidence from Dr. Mack, submitted to the Appeals Council, which cannot be used to determine if the ALJ's decision is supported by substantial evidence.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec*., 96 F.3d 146, 148 (6th Cir. 1996).  The Commissioner also characterizes these records from Dr. Mack as primarily consisting of Schweihofer's generalized self-reports, which would not negate the ALJ's finding of a decrease in symptoms as set forth in the May 2016 psychiatric report.  *See Morris v. Barnhart*, 78 Fed. Appx. 820, 824 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."); *see also Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (explaining that "an ALJ is not required to accept a claimant's subjective complaints").

Although Schweihofer also argues that she continued to experience mental symptoms after the date that the ALJ found medical improvement, the Commissioner points out that, even where a claimant experienced the same symptoms after the date an ALJ found medical improvement, "it does not alter the reality that [the Court] must affirm the ALJ's decision when substantial evidence supports it, even if the evidence could also support another conclusion." *Niemasz v. Barnhart*, 155 Fed. Appx. 836, 840 (6th Cir. 2005).  In support of her argument that there the ALJ correctly found a substantial change in Schweihofer's impairment as of May 24, 2016, the Commissioner identifies other evidence, besides the two physician notes above, as supporting the ALJ's conclusion: (1) Schweihofer testified that she completed an accounting class and a few hours of babysitting (Tr. 26, 66); (2) in assessing Schweihofer's mental RFC, the ALJ compared evidence from the close period of disability showing impaired memory and slowed psychomotor activity (Tr. 21), while such symptoms were not present in Dr. Bauer's report (Compare Tr. 487 with Tr. 723), when she was found no longer disabled.  Accordingly, the Commissioner maintains that the ALJ's decision identified substantial evidence to show that there was a decrease in the severity of Schweihofer's symptoms in accordance with 20 C.F.R. § 404.1594.

D. <u>Analysis and Conclusions</u>

1. Appeals Council records

As an initial matter, the undersigned agrees with the Commissioner that the Court cannot consider the medical records Schweihofer submitted to the Appeals Council. As the Appeals Council denied review, it is well established that this Court's review is limited to the record and evidence before the ALJ. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Walker v. Barnhart*, 258 F.Supp.2d 693, 697 (E.D. Mich. 2003). While a district court can remand the case for further administrative proceedings in light of such evidence if a claimant shows the evidence satisfies the standard set forth in sentence six of 42 U.S.C. § 405(g), Schweihofer has made no argument for a sentence six remand. *Foster*, 279 F.3d at 357; *see also Lee v. Comm'r of Soc. Sec*., 529 Fed. Appx. 706, 717 (6th Cir. July 9, 2013) (stating that "we view newly submitted evidence only to determine whether it meets the requirements for sentence-six remand."). Thus, the Court will give no consideration to those medical records submitted to the Appeals Council, not otherwise contained in the record.[2]

---

[2] Notably, some of the records submitted to the Appeals Council appear elsewhere in the record and were provided to the ALJ. (Tr. 712-713). The Court can, of course, rely on those records.

2.      Medical improvement

The core dispute in this case is whether the ALJ's analysis of medical improvement leading to the conclusion that Schweihofer's RFC renders her able to work, is legally correct and supported by substantial evidence.  As explained in detail in *Jackson v. Comm'r of Soc. Sec.*, 2018 WL 5316028, *2-3 (E.D. Tenn. Oct. 9, 2018), report and recommendation adopted, 2018 WL 5315197 (E.D. Tenn. Oct. 26, 2018), at the third step of the eight-step process, the ALJ must determine whether there has been a "medical improvement."  20 C.F.R. § 404.1594(f)(3).  "Medical improvement" is defined as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1).[3]

---

[3] The same "medical improvement" standard applies when an ALJ finds that there was a closed period of disability. "In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled." *Gillespie v. Comm'r. of Soc. Sec.*, 2010 WL 4063713, at *3 (E.D. Mich. Oct. 14, 2010) (citing *Long v. Sec'y of Health & Human Serv.*, 1994 WL 718540, at *2 (6th Cir. Dec. 27, 1994)).  "If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end his benefits."  *Ross OBO K.R. v. Comm'r of Soc. Sec.*, 2017 WL 3085351 (S.D. Ohio July 20, 2017) (citing *Niemasz v. Barnhart*, 155 Fed. Appx. 836, 839-40 (6th Cir. 2005).

To determine whether the claimant's impairments have "improved," the ALJ uses the comparison point decision date, which is defined as "the most recent favorable medical decision that you were disabled or continued to be disabled," as a reference point. *Jackson*, at *3 (quoting 20 C.F.R. § 404.1594(b)(7)). If at the time of the disability review, a claimant's impairments are less severe than they were at the comparison point decision date, then a medical improvement has occurred, and the ALJ must proceed to step four and determine whether the improvement is related to the claimant's ability to work. *Jackson*, at *3 (citing 20 C.F.R. § 404.1594(f)(4)). This requires the ALJ to assess the claimant's current RFC and compare it to her RFC at the time of the comparison point decision date. *Jackson*, at *3.

The ALJ found Schweihofer disabled through May 23, 2016. She relied in large part on the treating records and opinions of Dr. Shirley Mack,[4] Schweihofer's long-term treating psychologist. (Tr. 20-21). In fact, the ALJ gave great weight to Dr. Mack's August 2015 opinion. (Tr. 21). In summarizing Dr. Mack's records, the ALJ noted Dr. Mack's observations that Schweihofer's mental illness was "resistant to treatment" and that her depression "only vacillates slightly." (Tr. 21).

---

[4] In a footnote in her brief, the Commissioner notes that "therapists" are not acceptable medical sources under SSR 06-03p but notes that Dr. Mack has a Ph.D. and therefore will refer to her as "Dr." Mack. (Dkt. 15, p. 10, n. 3). It is unclear if the Commissioner is suggesting that Dr. Mack is not an acceptable medical source because she is a therapist. In any event, at the time the ALJ rendered her decision in this case (8/31/16), licensed or certified psychologists, such as Dr. Mack, were considered "acceptable medical sources" pursuant to 20 C.F.R. § 404.1513(a)(2) (version in effect from 9/3/13-3/26/17).

The ALJ found Dr. Mack's opinions consistent with the objective medical evidence of record, which demonstrated that Schweihofer exhibited "abnormal mental status examination including sleep deficits, restricted activity days, and slowed psychomotor activity, impaired memory, and, depressed mood."  (Tr. 21, citing 5F (Tr. 395-441, Dr. Mack treatment records) and 6F (Tr. 442-475, Dr. White treatment records)).  The ALJ also noted that, in February 2016, Dr. Mack observed that Schweihofer was "unable to regulate emotions, frequently in distress."  (Tr. 21, citing 15F, p. 3 (Tr. 708)).[5]  The ALJ did not expressly discuss any treating records from Dr. Mack after March 2016, although records through May 2016 were available in the record.  *See* note 4.

The ALJ determined that medical improvement occurred on May 24, 2016 for the following reasons:

> In April 2016, the claimant reported, "doing well and plans to continue medication at present dose" (Ex. 16F, pg. 2).  In May 2016, mental status examination revealed improvement in the claimant's symptoms (Ex. 17F). Mental status examination revealed, appropriate affect, linear thought process with no evidence of flight of ideas or loose associations, intact memory, insight, and judgment, with no evidence of psychomotor slowing or agitation (Ex. 17F, pg. 3).

---

[5] The ALJ's mention of February 2016 appears to be in error as the record from Dr. Mack on which the ALJ relies is dated March 25, 2016.  (Tr. 708)

(Tr. 25).  The ALJ relied on the May 23, 2016 report by Dr. Bauer, who first saw Schweihofer on that date (Tr. 722) and a report from her primary care physician, Dr. White, dated April 20, 2016.  (Tr. 715).

In determining medical improvement, the ALJ relied on two notes from two physicians involved in Schweihofer's medication management.  On April 20, 2016, Schweihofer reported to Dr. White that she was "doing well and plans to continue medication at present dose."  (Tr. 715).  This very same month, Dr. Mack observed that she was struggling with emotions, feeling abandoned again, was depressed and had a guarded prognosis.  (Tr. 710, 4/14/16 Progress Note).  Dr. Mack's records also document that plaintiff was sad and tearful, maintaining functioning, fearful of seeing the psychiatrist; her suicidal ideation was being monitored, and she was directed to continue to confront irrational thoughts.  (Tr. 711, 4/18/16 Progress Note).

The ALJ also relied on what she perceived as a "normal" mental status examination from Dr. Bauer, a psychiatrist who saw Schweihofer on one occasion on May 23, 2016.  (Tr. 723).  Yet, one week before this examination, Schweihofer reported feeling miserable, hated her online class, exhibited depression and anxiety symptoms, had racing thoughts, was sleeping only 4-5 hours per night, and Dr. Mack reported that "client stuck, needs continual evaluation of emotions, cognitives, and behaviors, directed to continue to focus on confronting irrational

thoughts." (Tr. 712, 5/12/16 Progress Note). And, three days after she saw Dr. Bauer, Schweihofer's mood was wavering, she was very depressed, she stayed in bed, could not concentrate and was feeling anxious when she did get up, and reported that taking the online class was exhausting and anxiety-provoking. Dr. Mack also continued to monitor suicidal ideation. (Tr. 713, 5/26/16 Progress Note).

Notably, Dr. Mack's records between March and May 2016 reflect that (1) Schweihofer was tearful and that, at night, she thinks about not wanting to wake up the following day (Tr. 707, 3/10/16 Progress Note); (2) "client unable to regulate her motions and frequently in distress" and that she was being monitored for suicidal ideation (Tr. 708, 3/25/16 Progress Note); (3) Schweihofer was angry, sad, and tearful (Tr. 709, 3/31/16 Progress Note); (4) while Schweihofer started an online class, she was struggling with emotions, feeling abandoned again, depressed and had a guarded prognosis (Tr. 710, 4/14/16 Progress Note ); (5) Schweihofer was sad and tearful, maintaining functioning, fearful of seeing psychiatrist, suicidal ideation being monitored, directed to continue to confront irrational thoughts (Tr. 711, 4/18/16 Progress Note); (6) feeling miserable, hates the online class, depression and anxiety symptoms observed, mind racing, sleeping only 4-5 hours per night, "client stuck, needs continual evaluation of emotions, cognitives, and behaviors, directed to continue to focus on confronting irrational thoughts" (Tr.

712, 5/12/16 Progress Note); and (7) mood wavering, very depressed, stayed in bed last week, getting up this week but cannot concentrate and feeling anxious, taking class has been exhausting and anxiety-provoking, continue to monitor suicidal ideation (Tr. 713, 5/26/16 Progress Note).  Contrary to the Commissioner's characterization, Dr. Mack's treatment records are not merely a memorialization of Schweihofer's subjective complaints but rather reflect objective, clinical findings. *See e.g.*, *Parr v. Colvin*, 2014 WL 301043, at *6, n.1 (S.D. Ohio Jan. 28, 2014), report and recommendation adopted, 2014 WL 656774 (S.D. Ohio Feb. 19, 2014) (treatment notes which included clinical findings such as "labile mood, mood swings, panicked mood, psychomotor retardation, decreased appetite, poor sleep, poor concentration, tearful, anxiety, agoraphobia," and which showed that the plaintiff's medications were often changed in an effort to make them more effective, provided ample objective evidence and clinical findings related to the plaintiff's mental impairments).  Indeed, the ALJ's substantial reliance on similar records from Dr. Mack to conclude that Schweihofer was disabled for a closed period belie the Commissioner's characterization.

The Social Security regulations recognize that a claimant's level of functioning may vary considerably over time and that longitudinal evidence is required in the case of mental impairments.  *Fithen v. Comm'r of Soc. Sec.*, 2016 WL 1281822, *8 (S.D. Ohio Apr. 6, 2016) (citing 20 C.F.R. Pt. 404, Subpt. P,

App. 1, 12.00(D)(2)).  As observed in *Fithen*, "improvement" in the level of

mental functioning is a relative concept and is dependent on the base level from the

improvement is measured."  *Id*.  The Sixth Circuit has held that "better" does not

mean no longer impaired:

> Even if [a doctor's] use of the word "better" referred to
> Plaintiff's mood, this word did not provide the ALJ with
> substantial evidence from which to find that Plaintiff's
> mental impairment had subsided. The ALJ made no
> inquiry into the degree of improvement, or from what
> baseline Plaintiff had improved. Under the ALJ's logic,
> any improvement in one's mood, regardless of how small
> and from what level the individual improved, would
> defeat a claim of mental impairment. This cannot be so.

*Boulis-Gasche v. Comm'r of Soc. Sec*, 451 Fed. Appx. 488, 494 (6th Cir. 2011);

*see also Winn v. Comm'r of Soc. Sec*., 615 Fed. Appx. 315, 322-23 (6th Cir. 2015)

(these notes [noting improvement] in no way contradict Dr. Wee's general

assessment of Winn's mental health.  The notes indicate progress and improvement

from some previous baseline; they are not inconsistent with the conclusion that

Winn's overall condition was such that she suffered from severe mental

impairment."); *McQueen v. Comm'r of Soc. Sec.*, 2014 WL 533496, *9 (S.D. Ohio

Feb. 11, 2014) ("There is no evidentiary basis for determining that plaintiff's

depression and anxiety had 'improved' such that Dr. Colmenares' findings were no

longer apt.  Rather, review of the record demonstrates that plaintiff's mental

impairments continued to fluctuate and manifest in significant symptomology.").

Here, as discussed in detail above, there is little evidentiary basis to support the ALJ's conclusion that Schweihofer's mental illness had so improved that Dr. Mack's opinions were no longer apposite.  This is important because unlike cases in which there has been no prior finding of disability, here it is the Commissioner who bears the burden of establishing medical improvement, not Schweihofer. Given the ALJ's reliance on Dr. Mack's treatment records and having given her opinions substantial weight, it is unclear why the ALJ did not consider these treatment notes in her assessment of improvement.  Indeed, the ALJ's opinion does not analyze the *degree* to which Schweihofer improved at all; there is simply no analysis as to the suggestion that Schweihofer's improvement from the baseline indicates an ability to work.  Moreover, in view of the authority cited above, a one-time mental status examination is not suggestive of improvement, given the fluctuating nature of mental impairments.  And, in this case, given the persistence of Schweihofer's symptoms over an extended period of time, a single mental status examination does not provide substantial evidence to support medical improvement.

Further, Dr. White's April 2016 notation does not appear to be of any appreciable significance to the medical improvement issue.  Dr. White's notes, over time, are not indicative of any significant change in Schweihofer's mental condition and mostly document medication management issues.  At best, they

show her condition was essentially the same over time and, as it relates to

Schweihofer's mental impairments and medication management. (Tr. 442-444,

7/29/14 mental status "grossly oriented to person, place and time."; "changed meds

and for last 2 weeks feeling depressed," "will f/u in 2-3 weeks may need to change

meds or increase dose."); (Tr. 456-458, 8/20/14, "medication somewhat better",

mental status "grossly oriented to person, place and time" and "mood normal,

affect appropriate."); (Tr. 469, 12/10/14, Celexa not working, depression and

fatigue increased); (Tr. 470, 5/13/15, "reports is doing well and plans to continue

medication at present dose," "feeling well, still seeing Dr. Mack, req occ Xanax,

increased stress and anxiety"); (Tr. 718-720, 2/17/16, "Pt. feels better this week but

she was down the month of January 2016", "was given a different generic for

Wellbutrin and she has had more s&s [signs and symptoms]", refer to psychiatrist

at Dr. Mack's suggestion); (Tr. 715, 4/20/16, started Wellbutrin, reports doing well

and plans to continue medication at present dose). Records like those of Dr. White

-- essentially showing stability since the last evaluation -- generally militate against

a finding of improvement. *Ryan v. Comm'r of Soc. Sec.*, 2018 WL 1096464, *7

(E.D. Mich. Feb. 8, 2018) (Patti, M.J.), report and recommendation adopted, 2018

WL 1089600 (E.D. Mich. Feb. 26, 2018) (Murphy, J.). To be clear, in reviewing

the evidence the ALJ relied upon to find medical improvement, the Court does not

re-weigh the evidence, but rather assesses whether the Commissioner met her

**burden** of showing medical improvement supported by substantial evidence of record. *Id*. at *9.

Even if the two notes from Drs. White and Bauer were deemed sufficient to substantiate a medical improvement "based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [plaintiff's] impairment(s)," *Kennedy*, 247 Fed. Appx. at 765 (quoting 20 C.F.R. § 404.1594(b)(1)), such a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision **and** an increase in your functional capacity to do basic work activities ..." *Id*. (quoting 20 C.F.R. § 404.1594(b)(3) (emphasis added)).[6]  As explained in *Kennedy*, a decision in which the Court of Appeals determined that the ALJ's medical improvement analysis was not supported by substantial evidence:

> … no effort was made by the ALJ nor any medical source to **compare** her abilities or her limitations to those possessed at the time of the initial determination. Medical improvement is any decrease in the medical severity of the claimant's impairment which was present at the time of the prior favorable decision. Medical improvement "is determined by a comparison of prior and current medical evidence ..." 20 CFR § 404.1594(c)(1). As noted above,

---

[6] The parties argue about whether Schweihofer's completion of an online class and her ability to babysit for a couple of hours on a few occasions is supportive of her ability to work. The undersigned suggests that these matters are immaterial because neither are "symptoms, signs and/or laboratory findings" that bear on whether there was "medical improvement" of Schweihofer's mental impairment.

> Kennedy appears to have had essentially the same
> functional abilities 1995 as these noted by the ALJ in
> support of his finding of medical improvement. The
> conclusions of the Commissioner and the ALJ that these
> functional abilities indicate medical improvement is not
> supported by substantial evidence and is in fact contrary
> to the evidence in the record.

*Kennedy*, 247 Fed. Appx at 765 (emphasis in original).  Here, the ALJ's first RFC

indicated that due to her psychiatric symptoms, she would need unscheduled

breaks, which would take her off-task at least 20% of the time, rendering her

unable to work.  (Tr. 19).  In the first Listing equivalency analysis, which the

undersigned recognizes is not an RFC, the ALJ concluded that Schweihofer had

moderate restrictions of daily living, moderate difficulties in maintaining social

functioning, and moderate difficulties in maintaining concentration, persistence of

pace.  (Tr. 19).  In the second Listing equivalency analysis, the ALJ concluded that

Schweihofer had mild restrictions in activities of daily living, moderate difficulties

in social functioning, and moderate difficulties in concentration persistence or

pace.  (Tr. 24).  Yet, in the second RFC, the ALJ concluded that Schweihofer's

need for unscheduled breaks was eliminated entirely, despite only finding

improvement in the area of activities of daily living.  Fundamentally, what is

missing from the ALJ's decision on medical improvement is any discussion of a

*comparison* of Schweihofer's abilities and limitations as of May 24, 2016 and

before that date based on the medical evidence purporting to show medical

improvement. *See Kennedy*, *supra*. That is, the ALJ does not make a logical or evidential connection between the symptoms, signs and/or laboratory findings showing medical improvement and an increase in Schweihofer's functional capacity to perform work. Thus, the ALJ's medical improvement analysis is not supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, and that defendant's motion for summary judgment be **DENIED**, and that the case be remanded to the Commissioner for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 22, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Sara Krause, acting in the absence of
                                           Tammy Hallwood, Case Manager
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov